LUCY A. TUPPER *vs.* BOSTON ELEVATED RAILWAY COMPANY.
ARTHUR M. TUPPER *vs.* SAME.

Middlesex.   November 11, 1909. — January 6, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Street railway.   *Evidence*, Admissions and confessions.

In an action by a woman against a street railway company for injuries sustained by her while she was a passenger in an open electric car of the defendant, if the plaintiff is the only witness and testifies that she had placed her six year old son at the end of one of the seats of the car and while standing between the seats took hold of the child to push him along to make a place for herself, when the car started ahead with a motion "like three bounds" and threw her forcibly against the seat, causing the injuries sued for, and if on cross-examination she admits that she stated to a claim agent of the defendant that the car started in the ordinary way and signed a memorandum to that effect, and, in response to a question of the presiding judge, says that the statement she made to the claim agent was "a fact," there is no evidence of negligence on the part of the defendant; *in the first place* because the admission of the plaintiff of the truth of her statement that the car started in the ordinary way is not to be treated as a mere contradiction of her testimony upon her direct examination, to be weighed and passed upon by the jury, but is to be taken as an affirmation of the truth of the statement previously signed by her after having had her attention called to the matter, *and also* because the testimony of the plaintiff on her direct examination, if it stood unmodified and unexplained, would not furnish evidence of negligence, there being nothing to show that the "three bounds" with which the car started ahead were so unusual or excessive as to warrant a finding that they were due to negligence.

TWO ACTIONS OF TORT against a corporation operating a street railway, the first by a married woman for personal injuries sustained while she was a passenger in an open electric car of the defendant on Huntington Avenue in Boston at about half past five o'clock in the afternoon of July 2, 1906, and the sec-

ond action by the husband of the plaintiff in the first case for damages occasioned by her injuries. Writs dated January 9, 1907.

In the Superior Court the cases were tried together before *Lawton,* J., who at the close of the testimony of the plaintiff in the first case ruled that there was no evidence of the defendant's negligence, and on that ground ordered a verdict for the defendant in each of the cases. The plaintiffs alleged exceptions.

*W. J. Corcoran,* for the plaintiffs.

*F. W. Fosdick,* (*E. A. Counihan, Jr.,* with him,) for the defendant.

MORTON, J. The woman plaintiff, whom we shall speak of as the plaintiff, was the only witness at the trial. In describing the accident in her direct examination the plaintiff, after stating that she had been to the children's hospital with her six year old son, who, though sick, was able to walk and move about, testified that "she took the car at a point opposite the hospital at Huntington Avenue. When the car came to a stop she lifted the child to the running board, stepped on the running board herself, lifted the child upon the platform of the car and put him from there upon the outer end of the seat. The car was an open car and this was the third or fourth seat from the rear. She then stepped into the body of the car and took hold of the child and was in the act of pushing him in from the outside of the seat until a space should have been made sufficient for her to seat herself and she was standing at the time ' facing her little boy,' i. e., looking towards the rear platform of the car when the car was started ahead with a motion which the witness described as 'like three bounds,' and she was then thrown forcibly on her left side against the seat on which the little boy was seated, and received personal injuries." On cross-examination she " testified that a claim agent of the defendant called at her house a day or two after the accident but had no conversation with her; that he came again the next day." She was then asked " if she made a statement to the claim agent and she replied in the affirmative. She was asked if a signature in a memorandum book produced by the counsel for the defendant was hers and she said that it was. A statement was read to her from this memorandum book, in substance to the effect that this car started in the ordinary way and she said she had made such

a statement. The presiding judge then asked, ' The statement you then made, do you now say is a fact ? ' to which the witness replied in the affirmative."

What we have quoted above from the bill of exceptions was in substance all of the testimony material to the question of the defendant's liability. And whether intended as a correction of what she had previously said in the direct examination or not the plaintiff must be taken, we think, to have meant by her answer to the question put to her by the presiding judge at the close of the cross-examination that the truth in regard to the way in which the car started was that it started in the ordinary way, in which case there plainly was no evidence of negligence on the part of the defendant. The case stands differently from the case of a witness making one statement in the course of the examination in chief and another of a contradictory nature in the cross-examination. Here, on having her attention called to the matter, the plaintiff pointedly affirmed the truth of the statement which she had previously signed.

But even assuming that the car started in a way which the witness attempted to describe in her direct examination, we do not think that her description goes far enough to show negligence on the part of the defendant. She testified that the car started ahead with a motion which she described as " like three bounds." But the jury would have been unable to determine from this description the speed or violence, if any, with which the car started and unable to determine, therefore, whether there was any evidence of negligence on the part of the motorman. It is matter of common observation that electric cars start with a jerk or jolt, but unless it is so unusual or excessive as to warrant a finding that it was due to negligence on the part of the defendant, such jerk or jolt furnishes no ground for recovery in case a passenger is injured thereby. The conductor was not obliged to wait until she had seated herself before giving the signal to start, and a comparatively slight jerk or " bound," as the plaintiff called it, might have caused the plaintiff to lose her balance and have thrown her against the seat. *Weeks* v. *Boston Elevated Railway*, 190 Mass. 563. *Sauvan* v. *Citizens' Electric Street Railway*, 197 Mass. 176. We think that the case comes within previous decisions. *Byron* v. *Lynn & Boston Railroad,*

177 Mass. 303. *Timms* v. *Old Colony Street Railway*, 183 Mass. 193. *Sanderson* v. *Boston Street Railway*, 194 Mass. 337. *McGann* v. *Boston Elevated Railway*, 199 Mass. 446. *Stevens* v. *Boston Elevated Railway*, 199 Mass. 471. *Hunt* v. *Boston Elevated Railway*, 201 Mass. 182.

*Exceptions overruled.*