CATHERINE NOLAN *vs.* NEWTON STREET RAILWAY COMPANY.

Middlesex.     May 15, 1910. — September 7, 1910.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Practice, Civil,* Exceptions, Conduct of trial.  *Negligence,* Street railway.  *Evidence,* Competency, Opinion: experts.

In an action of tort for personal injuries, a bill of exceptions by the defendant, setting forth exceptions to rulings by the judge presiding at the trial as to the admission and striking out of evidence and a refusal to rule that on all the evidence the plaintiff was not entitled to recover, did not contain any statement to the effect that there was a verdict for the plaintiff, and therefore did not show that the defendant was aggrieved by the rulings excepted to; but, since copies of papers transmitted to this court with the bill showed that there was a verdict for the plaintiff, the omission was considered by the court as "inferentially supplied." The exceptions, however, after consideration, were overruled.

In an action against a street railway company by a woman who, while she was a passenger upon one of the defendant's cars and was passing to a seat, was thrown down because of an alleged negligent sudden starting of the car, the plaintiff, in describing how the car started, testified, "It [the car] went right up like that. At least, I thought the car was going to stand right up, the way it struck me at that time. . . . It didn't start at all until it gave the jump. When it started, it gave a jump like." *Held,* that such testimony, being a plain description without the use of mere expletive or declamatory words, was competent evidence, and, together with evidence tending to show that the plaintiff was in the exercise of due care and that, if the controller of the car had been properly operated, there would not have been such a movement of the car as the plaintiff had described, and that the plaintiff was thrown down by the motion and was injured thereby, warranted a verdict for the plaintiff.

At the trial of an action of tort against a street railway company by a woman who, while she was a passenger upon one of the defendant's cars and was passing to a seat, was thrown down because the car was started in a manner which she alleged to have been negligent, there was evidence of the plaintiff's due care and that the car was started with an unusual and unwarranted jerk. An electrical expert called by the plaintiff, after being duly qualified, described in detail the workings of a "K controller," with which, the plaintiff's counsel stated to the presiding judge, he would show the car in question was equipped, and also testified as to the proper method of operating the controller, and that, if a "K 10 controller" were thus operated, the car would not start in the way the plaintiff had described that the one in which she was thrown down had started. The plaintiff later introduced evidence tending to show that all the cars which the defendant used at the time of the accident had "K controllers." Later, the plaintiff's expert having been recalled, testified that there were many kinds of "K controllers," of which the "K 10 controller" was one, but that his testimony was true as to all of them, and, after the defendant's motorman had testified that the controller upon the car in question was a "K 28 B, four-motor controller," the expert again testified, being called in rebuttal, that his

previous testimony applied thereto. The defendant excepted to the admission of all of the testimony of the expert, and at the close of all the evidence moved to strike out all of the testimony of the expert. The motion was denied. *Held,* that, the testimony given by the expert being germane to the issues on trial and the order in which witnesses should be examined being in the control of the presiding judge and subject to his discretion, the evidence properly was admitted and the motion properly was denied.

At the trial of an action of tort against a street railway company by a woman who, while she was a passenger upon one of the defendant's cars and was passing to a seat, was thrown down and injured because the car was started in a manner which she alleged to have been negligent, the plaintiff was the only witness on her own behalf who described the accident, and she testified that the car started with such a jerk that she got the impression that it " was going to stand right up, the way it struck me at that time. . . . It didn't start at all until it gave the jump. When it started, it gave a jump like." An electrical expert, testifying for the plaintiff, after stating what in his opinion was the proper way for the motorman to operate the controller in starting such a car, was asked whether, if the car had been so started, it " would . . . jump in the way that has been described." Subject to an exception by the defendant, the expert was allowed to answer the question, and answered it in the negative. *Held,* that it must be assumed that the witness knew the description which the plaintiff had given of the starting of the car, and that the form of the question was permissible.

TORT for personal injuries, received as the plaintiff was entering from the rear vestibule an electric street car of the defendant, and alleged to have been caused by a negligent starting of the car. Writ dated October 6, 1906.

The case was tried before *Bell,* J.

The plaintiff testified that on December 5, 1905, she had just gone two or three steps inside the car from the vestibule when, before she reached the third seat and before she had a chance to reach for a strap, on signal from the conductor the car started and threw her. In answer to the question in direct examination, " Well, now, how did the car start? Tell to the jury, describe to the jury just what kind of motion it was, how it appeared to you," the plaintiff testified, subject to an exception by the defendant, " Well, I never took notice of any car to start like this. It went right up like that. At least, I thought the car was going to stand right up, the way it struck me at that time." In answer to the question, " Did it start forward slowly or rapidly," she testified, " It didn't start at all until it gave the jump. When it started, you know, it gave a jump like."

In answer to questions as to what kind the car was, the plaintiff testified, " It was the old fashioned car with the two

seats on both sides. . . . I couldn't tell you whether it was long or short. I think it was the old fashioned car. I know nothing about them. . . . I think it was the short car. It was the short car. It was the oldest [kind that they used between Waltham and Newton]. I took notice when the car start first."

Philip W. Davis, qualified as an expert familiar with the application of electric power to street cars, was asked by the plaintiff's counsel, " Assuming that this car which caused this accident was operated by a controller similar to the one which you have in front of you in the diagram [indicating blue print], will you explain to the jury what the method is of the application of the power." Upon the defendant's objecting the presiding judge asked the plaintiff's counsel, " Are you going to offer evidence that this car was so equipped?" to which the plaintiff's counsel replied, " Yes, I will do .it first, if Your Honor wishes." Thereupon, subject to an exception by the defendant, the witness was permitted to answer the question, which he did by describing the controller in detail, especially with reference to the different contact points which controlled the amount of electrical current admitted to the motors, and the devices used to prevent .too much current being applied suddenly ; and, in answer to the further question, " What is the effect of skipping two points ?," and subject to further exceptions by the defendant, he testified, " If you skip two or three points, it overwhelms the motor with power and the car would jump forward very suddenly," and, in reply to a question by the presiding judge, explained that he did not mean that the motor necessarily would be injured, " because there is usually a fuse or circuit breaker in circuit which would go first," but that the motor might be injured. Later he stated that it would not necessarily " blow a fuse."

After being qualified as experienced in the operation of electric cars, the expert then was asked, " If an electric car . . . [with this controlling device, a single truck car, using a K 10 controller was] . . . operated in the usual way, that is, by moving the controller handle up to the first notch and permitting the car to go as fast as it could on that notch, and was then moved to the next notch, and permitted to go as fast as it could up to that notch, and so on, until the car was gotten under full headway, would a

car jump in the way that has been described?" Subject to an exception by the defendant, the witness answered, "I don't think it would. No."

In answer to questions by the presiding judge, the witness Davis stated that the only way in which a car should be started was "to put on one notch, allow the car to attain its maximum speed on that notch, then put on another notch, allow the car to attain its maximum speed on that notch and then add another."

One Eugene E. Murphy, called by the plaintiff, testified that he had been in the employ of the defendant from March 2, 1902, to June 15, 1907, as a conductor, and that during that time the old fashioned types of cars were not run on the defendant's road, and that the cars were equipped with general electric controllers in the "K class."

The witness Davis then was recalled by the plaintiff and testified that, if the controlling device on the car was of the general electric type, letter K, the answer he previously had given would apply equally well, no matter which of several kinds of "K controllers" it was.

Witnesses for the defendant testified that the plaintiff fell because she stumbled over a dress suit case placed in the aisle of the car by a passenger.

The motorman who was running the car at the time of the accident testified that the controller was a "K 28 B, four-motor controller." The plaintiff's expert witness Davis then was recalled in rebuttal, and testified, subject to exception by the defendant, that the description of the controller given by the defendant's motorman made no difference with the testimony Davis previously had given.

At the close of the evidence, the defendant moved that the testimony of Davis be stricken out. The presiding judge refused to do so and the defendant excepted.

The judge also refused to rule on all the evidence that the plaintiff could not recover. There was a verdict for the plaintiff (although the bill of exceptions did not state so); and the defendant alleged exceptions.

The case was submitted on briefs.

*S. L. Powers, E. K. Hall & P. F. Drew,* for the defendant.

*J. H. Vahey & P. Mansfield,* for the plaintiff.

BRALEY, J. The exceptions were not in proper form when allowed, as, the bill having failed to show that the plaintiff obtained a verdict, the defendant did not appear to be aggrieved. But upon resort to a copy of the papers transmitted with the record, although not made a part of it, the omission may be considered as inferentially supplied.

The plaintiff at the time of the accident having been a passenger, the defendant owed to her the duty of exercising that degree of care in the operation of the car which was reasonably necessary to protect her from personal injuries during transportation. We have uniformly held, that the sudden movement of cars operated by steam or electricity, even when accompanied by jolts, lurches or jerks, ordinarily does not show negligence of the carrier, although a passenger may suffer much physical uneasiness or be injured by the occurrence. The reason which frequently has been stated is, that, such incidents being practically inseparable from this mode of travel, they are reasonably to be expected, even if forcible in degree, and are assumed by him as a part of the contract of carriage. *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132, 134. *McGann* v. *Boston Elevated Railway*, 199 Mass. 446, 448, and cases cited. *Tupper* v. *Boston Elevated Railway*, 204 Mass. 151, 153. But where the irregular action of the car is so excessive and violent, although it may remain on the track, that from common experience the jury would be warranted in finding that the movement would not have happened but for a defect in the car or in the roadbed, or from carelessness in the management of the car, evidence of the accident and of the plaintiff's due care are *prima facie* sufficient to establish liability if no proof that it has not been guilty of negligence is offered by the carrier. *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527, 534, 535.

The statement of the plaintiff, that as she entered the car and while passing to a seat, the car started with such velocity as to give her the impression that it " was going to stand right up," is a plain description without the use of " mere expletive or declamatory words," which were characterized in *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332, 335, as being of no assistance in ascertaining the fact which the witness is attempting to de-

scribe. If she received a distinct sensation that the floor of the car was rising, it is not easy to conceive of a plainer or less rhetorical way of describing the force which she said caused her to fall and suffer severe injuries. To have rejected this evidence would have been in effect to say that the plaintiff could not be permitted to give a description of the accident. Nor is the defendant's argument, that the jury would be misled by it, of weight.

If the conductor was under no obligation to wait until the plaintiff was seated before giving the signal to start, the motorman was bound to use ordinary care in so applying the current of electricity when the car was started as to avoid injury to passengers who were taking seats. *Weeks* v. *Boston Elevated Railway*, 190 Mass. 563. *Tupper* v. *Boston Elevated Railway*, 204 Mass. 151. *Hamilton* v. *Boston & Northern Street Railway*, 193 Mass. 324. *Lacour* v. *Springfield Street Railway*, 200 Mass. 34, 35. *Gardner* v. *Boston Elevated Railway*, 204 Mass. 213. The plaintiff did not contend that the equipment of the car was defective, but that the whole power was abruptly and carelessly turned on in an attempt to start at the maximum speed, when if properly operated the car should have been slowly put in motion. It is well recognized that the adaptation of electricity as a motive power, with the construction and operation of the appliances by which the current is transmitted to the moving mechanism of the car, is not a matter of general knowledge, but properly may be the subject of expert testimony. *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131. *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276, 282. The order in which evidence should be introduced being within the discretion of the trial court to which no exception lies, the entire testimony of the plaintiff's electrical expert, whose qualifications appear to have been sufficient to enable him to express an opinion, was admissible in explanation of the proper method of operation, where the pattern of controller used was the same as that with which the defendant's car was equipped. *Commonwealth* v. *Johnson*, 188 Mass. 382, 385. *Sullivan* v. *Fugazzi*, 193 Mass. 518.

But if the defendant's general exceptions to the admission of evidence of this character are not well founded, it urges the exception taken to the question, whether if the car had been prop-

erly started by moving the handle of the controller at intervals from notch to notch, it "would . . . jump in the way that has been described." The question, and the answer, which was in the negative, must be read with the further answer given after the defendant's motorman had described the car and its equipment. It would seem to be plain, that even if the car and the controller were of the construction shown by the defendant's evidence, the testimony of the expert still was unequivocally to the effect, that if the power had been properly turned on the accident would not have happened. The objection to the question, however, on which the defendant most strongly relies, is the use of the words, "in the way that has been described." It is contended, that the inquiry should have been framed hypothetically, as the question assumed a fact as proved, of which there was only evidence for the jury. It is to be presumed that the witness knew of the plaintiff's description, which was the only evidence that the car rose up, and then plunged forward, and that his opinion was based upon this statement. If the question had been put by repeating what she had said as an assumption which the jury might determine to have been proved, his answer must have been the same. The terms of the question implied the witness was to assume that the plaintiff described what she contended was an actual event, but he was not asked to draw any inference as to the truth of her evidence, or to pass upon the weight of the testimony. The form of the question employed is substantially that which was used and approved in *Twombly* v. *Leach*, 11 Cush. 397, 405, *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169, 172, *Hand* v. *Brookline*, 126 Mass. 324, and *Rafferty* v. *Nawn*, 182 Mass. 503, 507. In those cases it was held that an expert, who had heard the testimony of a previous witness which was material to the issue, might give his opinion without the inquiry being hypothetical in form. The point was again raised in *Phillips* v. *J. H. Lockey Piano Case Co.* 205 Mass. 59, 63, where an expert was permitted to give his opinion predicated upon statements, "as testified to" by other witnesses. It was said in the opinion by Morton, J., "One objection urged is, in effect, that the question was not sufficiently comprehensive. But however much that might affect the value of the answer it did not make the question itself in-

competent. Another objection is that it called for the opinion of the witness upon the effect of evidence. We do not think so. The words ' as testified to ' referred simply to what had been previously described." It must have been clearly understood that, if the defendant's account of the accident was the true one, the plaintiff could not recover, and that the only ground upon which the action could be maintained was the assumption that the accident happened as testified to by the plaintiff.

In the conduct of the trial, where in the correct and orderly examination of witnesses much must be left to the discretion of the presiding judge, I fail to find that the defendant was prejudiced, and, the evidence having been properly admitted, the judge rightly refused to exclude it on the defendant's motion.

We are of opinion that it was a question of fact upon all the evidence, whether the car rose upward in the manner described, and if it did, that the jury also could find from the testimony of the plaintiff and of the expert that not only was such an occurrence extraordinary, but the motorman must have gone forward by the instantaneous application of a current, which he should have known was largely in excess of the power necessary to have been applied to start the car in the usual way. *Beal* v. *Lowell & Dracut Street Railway,* 157 Mass. 444.

*Exceptions overruled.*