RAYMOND E. ADAMS *vs.* UNITED ELECTRIC RAILWAYS COMPANY.

FEBRUARY 27, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

SWEENEY, J. This is an action of trespass on the case for negligence to recover damages resulting to the plaintiff by reason of an injury to his wife while a passenger on an electric car operated by the defendant. After a trial of the action in the Superior Court the jury returned a verdict for the plaintiff for $2,000. The defendant filed a motion for a new trial which was denied by the trial justice if the plaintiff remitted all of the verdict in excess of $1,500. The plaintiff duly filed a remittitur. The defendant has brought the case to this court by its exceptions. Defendant claims its exceptions to the denial of its motions for a directed verdict and for a new trial on the grounds that the verdict is against the law and the evidence. These exceptions will be considered together.

It appears in evidence that about 9 o'clock in the morning of January 30, 1923, a trolley car operated by the defendant, stopped at a white post near Esmond for the purpose of permitting the plaintiff's wife to board it as a passenger. The car was a closed one with a vestibule at each end. At each end of the car were seats about seven feet long, running lengthwise of the car, and between these seats were five cross seats. The floor of the car was wet on account of snow being tracked in by passengers.

Mrs. Adams testified that when the motorman opened the door in the front vestibule she stepped into it, and that just as she stepped through another door into the body of the car, the car started with a sudden violent jerk and threw her to the floor between the first or second of the cross seats and she felt a great pain in her leg. She testified that she has ridden on the cars a great deal, and in distinguishing between the usual starting motion of a trolley car and the motion that day she said that it was very unusual, and in describing it she said "there was a violent jerk, there was a jump, and the car seemed to shoot ahead, and it seemed as if the car was flying from under my feet." She testified that she did not slip but was thrown; that she was going to take the third seat from the front and that she had a small bag in her hand at the time. At the time of the accident Mrs. Adams was thirty-four years of age, in good health and, in addition to performing her household duties, taught music.

Mr. Glode, the only passenger, was seated in a rear corner, facing the front of the car. He saw Mrs. Adams fall as she came into the body of the car. He said she was thrown forward on the floor between the first and second seats. After the car had gone some distance he heard her calling for help, and he and the conductor went to her assistance. In describing how the car started he said that he has seen them start slower than this one did, and likened it to the starting of an automobile by putting your foot on the accelerator instead of on the brake. He said that the car started with a jump and would call it a rough start.

It appeared in evidence that this witness had signed and sworn to a statement which was contradictory to his testimony in several particulars.

The motorman testified that after Mrs. Adams got on the car he closed the vestibule door and then started the car in the ordinary manner, one notch at a time, and that there was no violent jerk or jolt. He was corroborated in these statements by the conductor. The plaintiff testified that several years before the trial he had worked as a motorman

nine months, and that in starting a car, if the motorman gave two or three notches, it would sometimes cause the car to almost jump off the rails. The conductor procured a doctor for Mrs. Adams, she was taken to her home and thence to a hospital, where it was found that she had sustained a comminuted fracture of her left kneecap. After several weeks in the hospital she returned home and the doctor testified that she has recovered the normal motion of her knee joint.

Common carriers of passengers are bound to exercise for the safety of passengers the highest degree of care and foresight consistent with the orderly conduct of their business with respect to all matters under their control. *Bosworth* v. *Union Railroad Co.*, 26 R. I. 309; *Boss* v. *Providence & Worcester Railroad Co.*, 15 R. I. 149. As a general rule it is sufficient as regards a boarding passenger, that the car is held stationary until he has reached a place of safety on the car, and it is generally held that it is not necessary to hold a car until a passenger is seated, and that the carrier is not liable for injuries sustained by a passenger while in the act of taking a seat, in consequence of the starting of the car, unless it is started in a violent, unusual or reckless manner. 10 C. J. 947. A carrier is bound to exercise towards a passenger boarding its car the highest degree of care consistent with the nature of its undertaking, to avoid injury from the sudden starting of the car. *Grinath* v. *B. & B. E. R. Co.*, (Md.) 125 A. 604. See also *Nolan* v. *Newton St. Ry. Co.*, 206 Mass. 384; *Rust* v. *Springfield Street Railway Co.*, 217 Mass. 116; *Griffin* v. *Springfield Street Railway Co.*, 219 Mass. 55.

The defendant admits the general rule that, where there is any legal evidence supporting the claim of the plaintiff, the court should not direct a verdict for the defendant, but contends that in this case there is no legal evidence of liability. We can not agree with this contention, and its exception to the denial of its motion for a directed verdict is overruled. In the case of *Randall* v. *P. & D. Ry. Co.*

(R. I.) 67 A. 419, involving an accident similar to the case at bar the court did not direct a verdict but only granted a new trial on the ground that the verdict for the plaintiff was against the preponderance of the evidence. In the case at bar the jury could have found from the conflicting testimony that the jerk in starting the car was much greater and more abrupt and violent than is usual and that the motorman was guilty of negligence. They did so find. The verdict has been approved by the trial justice in a carefully prepared rescript. After due consideration of testimony on the question of liability it is not clear that the decision of the trial justice was erroneous and the exception to the denial of the motion for a new trial on the ground that the verdict is against the law and the evidence is overruled.

The thirteenth exception is to the decision of the trial justice denying the motion for a new trial on the ground that the damages awarded by the verdict are excessive upon the filing of a remittitur by the plaintiff. This exception is sustained. The plaintiff has testified in detail to all of the expenses incurred by him on account of the injury to his wife and they amount to about $500.00. This does not include a claim for his own time used in caring for his wife, and which did not interfere with his regular work as a carpenter. Under the testimony we are of the opinion that $1,200.00 will amply cover the plaintiff's damages due to the loss of his wife's services and all of the expenses to which he has been or will be put to by reason of the injury she has sustained.

In our view of the case the other exceptions of the defendant become immaterial and therefore are not considered.

The defendant's exception to the decision of the trial justice upon the motion for a new trial on the ground that the damages are excessive is sustained. The other exceptions are overruled. The case is remitted to the Superior Court for a new trial, unless on or before March 5, 1925, the plaintiff files in the office of the clerk of the Superior Court a remittitur of all of said verdict in excess of $1,200.00. If

such remittitur is filed the Superior Court is directed to enter judgment for the plaintiff in the sum of $1,200.00.

*Joseph J. Cunningham, Cooney & Cooney*, for plaintiff.
*Clifford Whipple, Alonzo R. Williams*, for defendant.