Lenfant & Villere, of New Orleans (Howard Lenfant, of New Orleans, of counsel), for appellant.

Alvin R. Christovich, of New Orleans, for appellee.

## MILLER v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 17293.

Court of Appeal of Louisiana. Orleans.

May 20, 1940.

JANVIER, Judge.

On March 8, 1939, at about 12 o'clock noon, Evelyn Miller, plaintiff, after boarding one of defendant's electric street cars, fell to the floor of the car and sustained injuries. Seeking recovery from defendant, in her petition she made the following charge: "That the sole and only cause of her fall, and her resulting injuries, was the carelessness of the motorman and/or conductor of your defendant corporation in that said conductor gave the signal to start said street car while your petitioner was in a precarious position with nothing to hold

on to; further that the motorman of said street car was negligent in that he started his street car off in a sudden and jerky manner; further that your defendant corporation was negligent in not placing a support within easy reach of passengers, in the position such as petitioner was, stepping from the rear platform into the main body of the street car."

Defendant denied all of the allegations of negligence and averred that, after plaintiff "had safely boarded the street car, the said street car was put in motion in the regular and usual manner * * *" and that "while the street car was proceeding in a smooth, regular and easy manner", petitioner, "in entering the body of the car fell to the floor in some manner, which fall your respondent has been informed and believes was caused by a faint on the part of the passenger; * * *".

After a trial, at which many passengers of the street car and other persons were produced and in which the testimony concerning whether or not the car had been started suddenly or jolted violently was conflicting, there was judgment for defendant. Plaintiff has appealed.

When the matter was argued before us, counsel for plaintiff conceded that, though they still believed that the car had been started with a sudden and violent jolt, nevertheless there was a substantial preponderance of testimony in favor of defendant's contention that there had been no such jolt, and that, therefore, on this question of fact, it could not be said that the finding below was obviously erroneous; and counsel then made the contention that the car should not have been set in motion until plaintiff had found a seat or braced herself properly because she, on account of her physical condition—which should have been obvious to the conductor of the car —was unable to properly guard herself against falling when the street car was put in motion, even if there was no jolt or jerk of the car as the motorman applied the power.

It is not contended that it has been shown that the car was inadequately or insufficiently provided with hand-holds, or supports, as was alleged in the petition, and the entire controversy, as it was submitted to this court, hinges on the question of whether, because of her size and physical condition, it should have been apparent to the conductor that the street car should not have been started until plaintiff had seated herself, or at least had been able to support herself by grasping some part of the car.

■ Unless there is something about the appearance of a passenger which should make it apparent that the passenger is old or infirm, or otherwise physically incapacitated, or is unusually encumbered with bundles, it is not negligence for those in charge of a street car to cause it to start before the passenger has obtained a seat.

In Sharp v. New Orleans City R. Company, 111 La. 395, 35 So. 614, 100 Am.St. Rep. 488, the facts of which somewhat resembled this case, our Supreme Court said: "On the other hand, if plaintiff was on the platform and about to enter the doorway, the defendant is not responsible; for it is not charged in the petition, and it is not shown, that the movement of the car, either in starting or after getting under way, was negligent or out of the ordinary; and certainly it is not necessary to wait until the passenger has taken his seat, or even has entered the doorway, before starting a car. Such a rule would preclude the carrying of passengers on the platform, and would materially affect the expeditious operation of the cars; and to no purpose, since experience shows that the contrary practice is not usually attended with any danger. It has been decided that street cars need not wait until passengers are seated before starting.".

In Straight v. United Electric Railways Company, 46 R.I. 383, 128 A. 571, 572, the Supreme Court of Rhode Island said: "* * * The vestibule platform of a trolley car is ordinarily a place of safety. Passengers in the present day of traffic congestion expect the car to start when they reach the vestibule; they expect there may be some jolt or jerk in starting; they govern themselves accordingly, and injuries seldom occur from starting a car while the passenger is in the vestibule. The passenger's right is only that the starting shall not be unusually violent or reckless. Adams v. United Electric Ry. Co., supra [46 R.I. 312, 128 A. 197]. The adoption of any other rule would involve intolerable delays in traffic. Sound reason and public convenience alike sanction the view that it is not negligence merely to start a car after a passenger has firmly placed both feet upon the vestibule platform, even though that passenger is known to be on his way to the body of the car and that it will be necessary to take an upward step from the vestibule to reach such body."

Counsel for plaintiff rely with confidence upon the case of Saitta v. New Orleans Railway & Light Company, 12 Orleans App. 278, in which this court held that the cause of the fall of a passenger had been the starting of the car before the passenger had safely and completely entered it. But there the car was started when the passenger was stepping from the outside step to the platform and had not been able to place both feet on the platform. But the important point there was that the passenger was so encumbered with bundles that she could not maintain her balance nor regain her equilibrium after being thrown off balance. The car in that case did not have vestibule doors and, as it was started, plaintiff, with her arms full of bundles, was standing, teetering, only partially on the step. The court said: "It is undoubtedly true that the starting should not necessarily be postponed until the passenger is seated, but at the same time it was not in accord with that degree of diligence which is demanded under such circumstances, for the conductor to have caused the car to start when plaintiff had barely succeeded in reaching the platform and when he perceived that she had both arms so engaged that she could with difficulty maintain and not readily regain her equilibrium."

The language recognizes, first, the rule that there is ordinarily no duty in those operating a street car to delay starting it until the passenger has reached a seat, and, second, the exception to this rule where it is obvious that, because of physical or other reasons, the passenger is unable to exercise the simple care, or to take the ordinary precautions which are made necessary when a street car is started, even without unusual jolts or jerks.

We think, then, that if the car was started without unusual jerk or jolt, there was no negligence in the operators unless there was something about the appearance of plaintiff which should have warned them that the car should not be started until she had seated herself, or had at least been able to grasp a support of some kind. It is obvious also, we think, that this contention that plaintiff's appearance should have been a warning to the conductor that the car should not be started is an afterthought, since it is not in any way referred to in the pleadings. In fact, in the petition there is no reference whatever to plaintiff's physical condition except the allegation that "petitioner is a woman forty-one years of age and very heavy; that she was in good health prior to her fall". We gather from these allegations, when read in connection with the petition as a whole, that this reference to her health and to her weight was made for the purpose of suggesting that it would have required a very severe jolt to cause her to fall and not for the purpose of showing that she was physically unable to protect herself against the ordinary movements of a starting car. At any rate, there is not a word in the evidence which shows her to have been physically incapacitated to any extent. It is merely shown that she was short in stature and weighed about 225 pounds. Surely, it would not do to establish a rule based on the height, or the weight, or the age of a passenger, and we cannot find that any other court has undertaken to do so.

In Wallace v. Shreveport Railways Company, La.App., 175 So. 86, the plaintiff was a woman 54 years old who weighed 254 pounds, and, though it is true that recovery was allowed, it was based on the fact that defendant company had not been able to overcome plaintiff's proof that the car had been started with a sudden and unusual jolt and not on the fact that, because of her weight, plaintiff was entitled to have the car remain stationary until she had seated herself.

In Sharp v. New Orleans City R. Company, supra, the plaintiff was 70 years of age and weighed 220 pounds and yet there is to be found in that opinion no suggestion that, because of his age or weight, he was entitled to any such special consideration as counsel contend should have been accorded to plaintiff here.

We conclude that there was nothing at all about plaintiff's appearance which should have afforded a warning to the operators of the car that it should not be started until she had seated herself, and we, therefore, are of opinion that there was no reason for those operators to permit the car to remain stationary until she had found a seat, and, as we have said, it is practically conceded that the record shows, by a substantial preponderance of the evidence, that there was no severe jolt or unusual jerk.

As a matter of fact, the record creates the very distinct impression that the true cause of plaintiff's injury was the fact that she fainted just after she entered the car.

It may not be that this has been conclusively shown, but there are so many references to this fact that we cannot avoid the impression that that was the true cause of her fall.

Mrs. William Shiell, a passenger, saw plaintiff board the car. She states that there was no jolt or jerk of any kind; that she saw plaintiff board the car and proceed towards a side seat and that she "then slumped down".

Lillian Scott, another passenger, states that there was no jolt or jerk at all and that the first information she had that anything had happened was when she heard the conductor call out "for somebody to come to the back and see what's wrong with this woman".

The Charity Hospital report shows the nature of the injury to have been "fainted in a street car", though, of course, it must be conceded that this statement was based merely on information obtained from others and not on any actual knowledge which the intern at the Charity Hospital may have had.

Mrs. J. A. Hughes, another passenger in the car, when asked to tell what she saw, said: "Well, the woman fainted, she was lying on the main platform of the street car when I looked back".

Jesse Johnson, also a passenger on the car, says that plaintiff had been standing near the front of the car when it stopped and had run to the rear to board the car and that she "seemed to be slightly winded from rushing to the back of the car to get on". He says, also, that she became unconscious, but regained consciousness on the application of smelling salts. This same witness states that, though he did not remember hearing her say that she had fainted, he did hear someone else suggest it and heard her say that "it never happened before".

Mrs. Daisy Caserta, a registered nurse who was on the street car, says that she thought plaintiff had fainted, and she added, a little later, that she examined her and found no bruises on her body and concluded, as a result of all she saw, that "she was short-winded from hurrying to the car, or something like that".

But whether plaintiff fainted or not, we repeat the conclusion which we find inevitable—that there was no negligence in any of the employees of defendant company.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.