REDMANN, Judge,
dissenting.
Plaintiffs’ brief states — and my reading of the record permits no other conclusion— that the fall occurred not when the bus started as the light turned green, but when the bus driver suddenly applied his brakes: “plaintiff, Diana Shields, boarded the bus heavily burdened with packages; and it was she who fell when the bus made the emergency stop, and thus precipitated the ‘domino effect’ referred to by the trial judge.”
A head-on collision does not hurl a car’s occupants rearwards into its back window. And the emergency stopping of a forward-moving omnibus could not, and therefore in this case did not, cause its passengers to fall rearwards. Yet that is, of necessity, the story told by plaintiffs in these consolidated cases other than Shields. Their story (essential to defendant’s liability) is that they were knocked down from their standing positions by package-laden Shields, who had just got on the overcrowded bus at the very intersection in which the driver had to jam on his brakes to avoid collision with a truck which was running a red light. Shields fell when the brakes were applied, the theory is, because she had not had time to put down packages and find a handhold.
The trial judge reasoned:
I find that the bus driver proceeded on a green light, and that the bus driver was reasonable in applying his brakes to avoid what he believed was an imminent collision with a truck which almost ran a red light.
Nevertheless, the bus driver was negligent in starting from the bus stop before a passenger, whose arms were full of packages, had a chance to find a seat or put her packages down so she could hold on to a railing. Her fall precipitated a *1126 domino effect in which the other claimants were injured.
. The “domino effect” could only have occurred from braking if Shields were to the rear of the bus, behind the other passengers. But, in the brief interval from Shield’s getting on the bus until the brake application, during which there was not enough time for Shields to put down her packages, there was also not enough time for Shields to have worked her way with her unmanageable load of packages through the overcrowded standing passengers (including the other three plaintiffs) to a place behind them, from which Shields’s forward momentum could have knocked them down when the brakes were applied. (For Shields to have got to the rear of the bus, she would have had to get on the bus at a previous stop, in which case there would have been no showing of fault on defendant’s part.)
Recovery by Shields alone (if she had still been at the front of the bus and fell forward against it) would be consistent with the trial court’s reasoning that defendant owed her the duty to wait until she put down her packages and secured herself, because it could be said that defendant’s breach of that duty caused her fall when the brakes were applied. However, no such duty is owed merely because a passenger has both hands occupied; Carter v. New Orleans Pub. Serv. Inc., La.1975, 305 So.2d 481. Plaintiffs argue to the contrary from obiter dicta in Miller v. New Orleans Pub. Serv. Inc., 196 So. 86, La.App.Orl.1940, and from three other Court of Appeal cases which refer to Miller’s dicta. In each of those four cases the passenger lost and therefore none decided the point at issue contrary to the Supreme Court’s Carter. Carter controls.