ROBERT E. N. MARSHALL *vs.* BOSTON AND WORCESTER STREET RAILWAY COMPANY.

Middlesex.    January 7, 1907. — May 14, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.    Carrier,* Of passengers.    *Street Railway.*

While a corporation operating a street railway does not guarantee to its passengers the soundness of its equipment, it is its duty to provide and maintain suitable cars and in doing so to use the highest degree of active diligence consistent with the practical operation of its railway.

A street railway company, when it buys from a reputable manufacturer an axle

and wheels to put under a car to be operated by it, does not perform its whole duty toward its passengers in guarding against a defect in these appliances, and is bound before using the wheels and axle to apply every reasonable test to discover whether they are in a suitable condition for service.

In an action against a street railway company for personal injuries incurred while a passenger on an electric car of the defendant which left the rails owing to a wheel being loose upon an axle, the wheel having been manufactured and pressed upon the axle and the axle and wheel having been supplied to the defendant by a reputable manufacturer, if it appears that, after the axle and wheels had been placed under the car, the car had been run over the track to ascertain whether the wheels worked properly and whether the gauge corresponded, but that a practical test by shutting off the motors separately, which could have been applied and which, if resorted to, would have disclosed the defect, was not applied, and that after the car had been in use for two days the accident occurred, it is a question for the jury whether after purchasing the wheels and axle the defendant had applied every reasonable test and had taken every reasonable precaution to ascertain before using them whether they were in a suitable condition for service, and it also is a question for the jury whether further tests reasonably were required and would have revealed the defect, and, if so, whether the defendant was negligent in omitting to apply such tests.

TORT for personal injuries incurred while a passenger on an electric car of the defendant which left the rails owing to a wheel being loose upon an axle, the wheel having been manufactured and pressed upon the axle and the axle and wheel having been supplied to the defendant by the National Cog Wheel Company, a reputable manufacturer and dealer. Writ dated July 15, 1904.

In the Superior Court the case was tried before *Hardy*, J. The substance of the evidence and the instructions of the judge are described in the opinion. The jury returned a verdict for the defendant, and by agreement of the parties the judge reported the case for determination by this court. If the charge of the judge was warranted by the law as applied to the evidence the verdict was to stand; if not, the verdict was to be set aside and a new trial was to be granted.

*J. J. Shaughnessy, (F. P. O'Donnell* with him,) for the plaintiff.
*G. Murchie,* for the defendant.

BRALEY, J. The plaintiff while being transported as a passenger was injured by the derailment of the defendant's car owing to a wheel on one of the trucks being loose. In the operation of its road, the defendant bought of a reputable manufacturer the cars with their equipment, and such appliances as might be required to maintain them in suitable repair. By the

process of manufacture the wheels were forced on to the axle under such a pressure that if properly adjusted they remained rigid, and when in use instead of revolving on the axle as a centre, turned with it.  Upon purchase they were placed under the car, which was then run over the track to ascertain whether the wheels worked properly and the gauge corresponded.  But no dynamic test was made to determine whether they were solidly attached, as the defendant possessed no suitable apparatus for this purpose.  It appeared, however, that a practical test by shutting off the motors separately could have been applied, which would have disclosed the defect.  When the car had been in use for two days the accident occurred.  Upon examination, fine pieces of iron filings were discovered at the point of revolution, . and, upon measurement, the distance between the wheels was found to be somewhat less than the space between the rails. The report states, without describing the details, that the defendant inspected the wheels and axle after they were attached, but did not apply the test by motor, and until derailment it had no actual knowledge that the wheel was loose.  Upon these facts, over which there does not seem to have been any serious dispute, the question presented by the report is, what degree of care the defendant was required to exercise in the selection, maintenance and use of its rolling stock, and whether the instructions given as to this duty correctly stated the rule.  It often has been said that a common carrier of passengers does not warrant that the roadbed, engines, cars or appliances used shall be perfect, for by the contract of transportation he does not become an insurer of the safety of the passenger.  *Ingalls* v. *Bills*, 9 Met. 1, 15.  *Warren* v. *Fitchburg Railroad*, 8 Allen, 227.  But while the absolute soundness of the equipment used was not guaranteed, the defendant did undertake to provide and maintain suitable cars.  *Galligan* v. *Old Colony Street Railway*, 182 Mass. 211, 214, 215.  The duty imposed was defined in *Ingalls* v. *Bills*, 9 Met. 1, 15, as consisting of the " utmost care and diligence," and this definition generally has been followed in this country, although the form in which it is expressed may have varied.  See Hutchinson on Carriers, (3d ed.) § 895, for a collection of the cases. This statement of the rule, however it may be phrased, does not mean, as pointed out in *Dodge* v. *Boston & Bangor Steamship Co.*

148 Mass. 207, 218, that the officers and agents of the defendant should have exercised the greatest possible degree of foresight of which men are capable.   See *Sawyer* v. *Hannibal & St. Joseph Railroad*, 37 Mo. 240.   But in transporting the plaintiff the defendant was required by the contract, even if the defect was shown subsequently to be hidden, to use the highest degree of active diligence commensurate with the mode of transportation employed and the practical operation of its railway. *Ingalls* v. *Bills, ubi supra.   Gaynor* v. *Old Colony & Newport Railroad*, 100 Mass. 208.   *Galligan* v. *Old Colony Street Railway, ubi supra.   Libby* v. *Maine Central Railroad*, 85 Maine, 34. *Pennsylvania Co.* v. *Roy*, 102 U. S. 451.   *Readhead* v. *Midland Railway*, L. R. 2 Q. B. 412, and 4 Q. B. 379, 392, 393.   *Manser* v. *Eastern Counties Railway*, 3 L. T. (N. S.) 585, 586.   In *Ingalls* v. *Bills* there was a flaw in the iron axletree of a stage coach, while in *Readhead* v. *Midland Railway* the wheel of the car gave way owing to a defective weld in the tire caused by an air bubble.   In each case a careful and skilful examination would have failed to show any imperfection.   It was decided that unless the defect was undiscoverable by such an examination the defendant was not excused from taking reasonable care to ascertain whether the coach and car were roadworthy.   If, instead of purchasing, the defendant had made the appliance, it could have been held liable for negligence if the looseness of the wheel would have been discovered by a proper inspection during the process of manufacture.   By engaging a manufacturer the duty was not shifted, and the defendant still was required to examine thoroughly and skilfully the equipment furnished before putting the lives and safety of its passengers in jeopardy from the use of what otherwise might prove to be a dangerously defective car. *Buckland* v. *New York, New Haven, & Hartford Railroad*, 181 Mass. 3.   The defendant consequently was bound to apply every reasonable test and take every reasonable precaution to discover before using them whether the wheels and axle were in suitable condition for service.

The plaintiff complains that the instructions given were not in conformity to this rule.   If the first paragraph is separated from the context they are open to this criticism, for the jury well might have inferred that as the defendant bought from a repu-

table manufacturer its duty to the plaintiff had been discharged. But when this instruction is considered in connection with the remaining paragraphs, they were told, and must have understood, that the defendant's obligation extended further, and that, after purchase, the company by its servants and agents still must exercise reasonable care "commensurate with the danger which may arise to the lives and limbs of passengers," to ascertain the fitness of the wheels and axle before putting them in use, and that if this duty had been performed properly, the defendant was not guilty of negligence. *Buckland* v. *New York, New Haven, & Hartford Railroad, ubi supra.* It was for the jury, to whom this question was left under the charge as a whole, also to determine whether further tests reasonably were required and would have revealed the defect, and, if so, whether the defendant's omission to apply them was negligence.

By the report it further is stated that if properly pressed upon the axle a car wheel will not become loose, and the jury were instructed in substance that if the wheel was defective through the fault of the manufacturer, and after delivery the defect was undiscoverable by the exercise of proper care, the defendant was not responsible. But, while it should not be overlooked, the question whether the carrier should be held liable where the defect is of a nature which by the exercise of ordinary care could have been discovered and remedied by the maker during the process of adjustment at the factory need not be decided, as it has not been raised on the plaintiff's brief or argued by his counsel.

In accordance with the terms of the report the verdict is to stand.

*So ordered.*