JENETTA CRAIG *vs.* BOSTON ELEVATED RAILWAY COMPANY.
GEORGE W. CRAIG, administrator, *vs.* SAME.

Suffolk. December 8, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Street railway.

At the trial of an action against a street railway company by a woman, who as she was about to take a seat in a closed electric car of the defendant was thrown to one side upon another passenger by an alleged sudden starting and jerking of the car, the plaintiff and two other witnesses testified for the plaintiff. The plaintiff testified that as she was facing toward the side of the car and was in the act of sitting down, she first was thrown forward with a sudden jerk and then jerked back and that one of her companions, another witness, who was standing, was not thrown but would have been if she had not been holding on to a strap. The companion referred to testified that the accident happened at 11.30 in the evening and

that people were going home from the theatre, that there were a number of jerks of the car near together violent enough to take one off one's feet, but that she was not taken off her feet because she recovered herself by taking hold of a strap. The third witness, another companion of the plaintiff, similarly described the movements of the car and testified that she saved herself from being thrown by taking hold of the door frame. *Held,* following *McGann* v. *Boston Elevated Railway,* 199 Mass. 446, that there was no evidence of so unusual a movement of the car as to warrant a finding that the motorman was negligent.

A constant stopping and starting of an electric street car with a jerky movement to avoid collisions with persons, vehicles and cars as the car passes along a public street in front of a theatre from which crowds are emerging after an evening performance does not in itself constitute evidence of negligence on the part of the motorman.

TWO ACTIONS OF TORT, the first for injuries alleged to have been received by reason of the jerking and sudden starting of a closed electric car upon which the plaintiff was about to take a seat, as stated in the opinion. The second action originally was by the husband of the plaintiff in the first action and was for loss of consortium and expenses to which the husband was put because of the injuries to his wife. The husband died during the pendency of the actions, and the second action was prosecuted by the administrator of his estate, the claim for damages due to loss of consortium being waived. Writs dated November 26, 1906.

In the Superior Court the cases were tried together before *Wait,* J. The facts are stated in the opinion. At the close of the plaintiff's evidence the presiding judge ordered a verdict for the defendant; and the plaintiffs alleged exceptions.

*C. S. Tilden,* for the plaintiffs.

*J. T. Hughes,* for the defendant.

LORING, J. The plaintiff in the first action (a woman sixty-seven years of age) had been to the theatre in company with her own daughter, a Mrs. Goodwin and Mrs. Goodwin's daughter. After the theatre they waited for a car at the corner of Washington and Boylston Streets. The car stopped. The plaintiff entered first, followed by Mrs. Goodwin, then by Mrs. Goodwin's daughter, and lastly by her own daughter. The plaintiff, her own daughter and Mrs. Goodwin testified at the trial; Mrs. Goodwin's daughter did not. The plaintiff's story was that she went to the forward end of the car because there was but one vacant seat at the rear. To quote her own words, " She was in the act of sitting down when the car gave a sudden jerk and

threw her forward. She thought she was facing toward the side of the car at the time. She was just in the act of sitting down. She was thrown forward, first with a sudden jerk, and then jerked back, and fell, she thought on Mrs. Goodwin, . . . who had followed her into the car. When she sat down her left knee began to pain, and as a result of what happened, she suffered from pain and has a weakness in the leg." The plaintiff further testified that Mrs. Goodwin was not thrown down, but "if she hadn't been holding on to a strap, she would have gone down too," and that no one else in the car was thrown over. Mrs. Goodwin testified that there were a number of jerks near together and " violent enough to take you off your feet," but that they did not take her off her feet; that the sudden jerks threw the plaintiff off her feet into a passenger's lap, and " jerked me some, but I recovered myself by taking hold of the strap." The plaintiff's daughter testified that " the car started and then stopped, not a dead stop, and then started again "; that one motion followed the other suddenly, and that the car went "a very, very little distance " on the first start before it stopped again. That she had to support herself " by taking hold of the door frame, or it would throw me in the car." That she did not see her mother thrown and could not do so, being behind Mrs. Goodwin and her daughter. The testimony showed that all four were safely seated, that no other persons boarded the car at the time, and that those previously in the car were seated.

We are of opinion that the evidence did not go far enough to warrant a finding that the motorman was negligent, and that the case comes within *McGann* v. *Boston Elevated Railway*, 199 Mass. 446. A jerk such as is usual might well throw a passenger "just in the act of sitting down " into the lap of a passenger next to her if the passenger was not prepared for it, and a person might well take hold of a door frame to steady himself in such a case. In *Byron* v. *Lynn & Boston Railroad*, 177 Mass. 303, one of the witnesses testified that the motion of the car there in question " knocked me over, my hand against the sash of the window. I came near falling over the lady I had given my seat to." In spite of that it was held in that case that the evidence did not go far enough to warrant a finding that the motorman was negligent.

Mrs. Goodwin's testimony gave the explanation of the series of jerks. She testified " that it was eleven-thirty and people were going home from the theatre." If the constant stopping and starting was to avoid collision with persons or carriages crossing ahead of the car, or because of cars ahead of it, there was no negligence on the part of the motorman. See in this connection *Timms* v. *Old Colony Street Railway,* 183 Mass. 193, 194, and *McGann* v. *Boston Elevated Railway,* 199 Mass. 446, 449.

*Exceptions overruled.*