MARY GRIFFIN *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

Hampden.    September 21, 1914. — October 23, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Street railway, *Res ipsa loquitur.*

Although the fact, that an electric street railway car started with a sudden jerk so violent as to throw a healthy woman off her feet, is not in itself evidence of negligence on the part of the corporation operating the car, yet, if this fact is supplemented by the testimony of witnesses, who have special and unusual knowledge on the subject, that, if an electric car started with a sudden jerk of such force as to throw down a healthy woman while walking forward in the car and about to take a seat in it, the cause was either the imperfect condition of the mechanism of the car or the improper handling of the controller by the motorman, there is evidence for the jury of negligence on the part of the railway corporation in an action brought against it by such a woman for injuries thus caused.

TORT for personal injuries sustained on December 26, 1907, when the plaintiff was a passenger on an electric street railway car operated by the defendant at or near the corner of Liberty and Genessee Streets in Springfield. Writ dated May 26, 1908.

In the Superior Court the case was tried before *Pierce,* J., who, at the close of the plaintiff's evidence, the material part of which is described in the opinion, ruled that there was no sufficient evidence of any negligence on the part of the defendant to entitle the plaintiff to recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs.

*A. R. Bostick & C. G. Gardner,* for the plaintiff.

*H. W. Ely & J. B. Ely,* for the defendant.

RUGG, C. J.  The plaintiff seeks to recover damages for personal injuries sustained while a passenger upon one of the street railway cars operated by the defendant. The evidence tended to show that the car was of the ordinary type of closed car, with a vestibule at each end. The usual signal to start the car was given just as the plaintiff had gotten into the body of the car "and was about to take a seat," or "was about to sit down on one of the seats running lengthwise of the car," and that

then "the car started with a jerk by reason of which the plaintiff was violently thrown backwards" and injured. She was sixty-five years old, in good health and physical condition. The plaintiff's daughter testified that, as her mother was about to sit, "the car gave a terrible jerk . . . and . . . threw her to the floor." In answer to the question, whether there was anything to direct her attention to the force or kind of jerk, she answered, "I noticed it was more than an ordinary jerk, the way it threw her down. . . . It would have thrown myself down, but I grabbed hold of the car . . . to save myself."

This testimony is almost in the same words as that held in *Craig* v. *Boston Elevated Railway*, 207 Mass. 548, not to entitle the plaintiff to go to a jury. If this was all there was to the plaintiff's case, she would be precluded from recovery by the authority of that decision.

That case is illustrative of many which have come before this court where a plaintiff by the use of violent descriptive epithets as to the nature of the starting of the car, together with testimony of injury, has sought to sustain his burden of proof. Uniformly it has been held that that is not enough. Anybody standing in an electric car is liable to be thrown off his balance and to fall as a result of such starts and jerks. Most of these cases are collected and reviewed in *McGann* v. *Boston Elevated Railway*, 199 Mass. 446, *Work* v. *Boston Elevated Railway*, 207 Mass. 447, and *Martin* v. *Boston Elevated Railway*, 216 Mass. 361.

In its last analysis the principle upon which these and like plaintiffs have rested has been that of *res ipsa loquitur*. It is that principle which has been decided to be inapplicable (unless there is further evidence) to those ordinary starts and jerks which everybody knows have been common incidents of travel upon electric cars. But it has been recognized expressly or impliedly in such decisions that they depend upon the degree of perfection in electrical science as applied to the uses of common carriers and the reasonable possibility of preventing such starts and jerks. It was said in *Hunt* v. *Boston Elevated Railway*, 201 Mass. 182, at page 185, "There is every probability that these are necessary in the present state of the science" of operating street railways. Apparently it was in the mind of the court that conditions might be shown which would indicate that jolts and jerks were the

result of negligence. Those decisions did not purport to lay down an absolute and inflexible proposition, but only to formulate a practical working rule adapted to common observation and the evidence then before the court. Different evidence might require a different result.

There was evidence in the case at bar which went further than that which has been narrated or that which appeared in the cases cited.

Witnesses having special and unusual knowledge respecting the subject testified to the effect that if an electric car started with a sudden jerk of such force as to throw down a woman like the plaintiff in years and health, while walking forward in the car and about to take a seat inside the car, the cause was either the imperfect condition of the mechanism or the improper handling of the controller by the motorman. This testimony tended to show that starts and jerks of sufficient violence to produce such a definite physical result, in the present state of the electrical science, are not the usual and necessary incidents of the operation of street cars. It goes further than the cases cited where the only thing shown was the jerk in the start of the car. It takes the present case out of the class where reliance has been put upon the doctrine of *res ipsa loquitur*. It would show, if believed, that, with the kind of mechanism and skill in operating which the defendant was required by law to furnish in the performance of its duty as a common carrier of passengers, a jerk in the starting of a car of sufficient force to throw down a passenger of reasonable physical strength in the act of becoming seated in the car, would not occur. It presents the case of injury occurring to a passenger in the exercise of due care under circumstances where negligence of the defendant may be found from the definite physical fact of a start of the car of such nature as to cause the fall of a standing passenger. Unaided, the event did not speak of negligence. Supported and interpreted in the light of the expert evidence, it may be found to tell a story of negligence. Difficulties may arise in the weighing of such testimony in the face of every day experience, but that is a question of fact, lying within the province of the jury under proper instructions.

This conclusion is in no wise at variance with the well settled

rule which governs when the plaintiff merely relies upon the injury. It is a different kind of case from those usually presented heretofore, where no basis has appeared for the inference of negligent conduct on the part of the defendant.

*Exceptions sustained.*