CAROLINE ANDERSON *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.    December 2, 1914. — December 31, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Street railway.

In an action by a woman against a corporation operating a street railway for personal injuries sustained when the plaintiff was a passenger in a car of the defendant, there was evidence that as the car was approaching a station in a subway but had not come to a full stop the plaintiff, who had risen from her seat and had taken two or three steps toward the forward end of the car without having hold of any strap, was thrown over sideways and her hand went through a window of the car and was injured. She testified that, as the car came to the curve at the station, "all of a sudden, the car gave an awful jerk; a violent jerk. That threw me right to this side. It was just as though the car was going to tip right over." *Held,* that the plaintiff's description of the jerk of the car and the effect which it had upon her was not sufficient evidence of the negligence of the motorman to require the submission of the case to the jury.

CROSBY, J.  The plaintiff, who was a passenger on a car of the defendant, was injured at or near the Park Street subway station by her hand going through one of the windows of the car.  She testified that as the conductor called the station "the car came to a stop, and that she had taken two or three steps toward the forward end of the car before the jerk came; that her right hand went through the second window from the front on the right hand side of the car opposite the seat there that runs lengthwise; that the car started up again after the jerk and ran some distance before it stopped finally."  She also testified: "The conductor called out, 'Park Street, change cars,' etc.  Everybody got up. I got up.  The car, all of a sudden, the car gave an awful jerk; a violent jerk.  That threw me right to this side.  It was just as though the car was going to tip right over, and of course, why, if I hadn't taken hold with my hand, I would have gone with my head first."  She further testified that she did not have hold of any strap because they were all "occupied."

At the close of the evidence the defendant requested the presiding judge to rule that on all the evidence the plaintiff could not recover, and that there was no sufficient affirmative evidence of negligence on the part of the defendant.  The defendant excepted to the refusal of the judge to give these rulings, and also excepted to so much of the charge as was inconsistent with the rulings.

The judge submitted to the jury two special questions.  The first was: "At — or immediately before — the plaintiff arose from her seat, had the car come to a full stop?"  To this question the jury answered "No."  While the plaintiff testified that the car had come to a stop before she arose from her seat, still, since the jury have found that it did not stop, we must assume the fact to be as found by the jury.

There is no evidence to show that the track was not in proper condition or that the car was defective.  The only question is whether the motorman could have been found to be negligent "in his method of going round the curve."  The plaintiff contends that her description of the jerk of the car and the effect which it had upon her was sufficient evidence to warrant the jury in finding that the motorman was negligent in the operation of the car as it passed around the curve in coming into the station.  Three

other witnesses testified at the trial, but none of them described the movements of the car as extraordinary or unusual. The case therefore must stand or fall solely upon the plaintiff's testimony.

It is a matter of common learning that electric cars cannot be run without occasional jerks and jolts, and for injuries to passengers arising from the ordinary sway or lurch and jerk of a car there is no remedy because there is no evidence of negligence; and this is true no matter how vivid, vigorous and vehement the adjectives employed may be in describing the movement of the car. *Hamilton* v. *Boston & Northern Street Railway*, 193 Mass. 324, cited by the plaintiff, was a case where the plaintiff was injured by the sudden starting of a car before she had a reasonable opportunity to reach a place of safety within the car. She was accompanied by her little boy, and when she was in the act of placing him upon the seat, the car started with a jerk and she was hurt. It was held that it was the duty of the conductor to ascertain whether the plaintiff had boarded the car and had got in such a position as to make it safe to start. The facts in that case have no application to the case at bar. *Cutts* v. *Boston Elevated Railway*, 202 Mass. 450; *Black* v. *Boston Elevated Railway*, 206 Mass. 80; and *Lacour* v. *Springfield Street Railway*, 200 Mass. 34, were all cases where there was affirmative evidence of physical facts as to either the starting or stopping of the car from which negligence could have been inferred. In *Nolan* v. *Newton Street Railway*, 206 Mass. 384, there was evidence that the car did not start slowly, but that when it was standing still the whole power was abruptly and carelessly turned on in an attempt to start at the maximum speed causing it to start with a "jump," and the plaintiff was thrown down before reaching a seat. She testified that it appeared as if the car "was going to stand right up." It was held by this court that there was evidence of what appeared to take place as a physical fact, and tended to show indirectly that the motorman was negligent.

*Rust* v. *Springfield Street Railway*, 217 Mass. 116, also relied on by the plaintiff, cannot be regarded as an authority for the plaintiff in this case. In that case there was evidence to show that the plaintiff, while sitting upon the end seat of an open car, was thrown upon the running board and then out into the street a distance of nearly fifteen feet, by reason of a violent jerk of the

car.  It was held that the jury could have found from these
physical facts that the jerk which threw her off was much greater
and more abrupt and violent than is usual, and was evidence of
negligence of the motorman.

In the two cases last referred to there was evidence of certain
physical facts which ordinarily do not occur when a car is care-
fully operated, and which warranted the conclusion that the in-
juries received by the plaintiffs were not due to the ordinary jerks
and jolts or swaying incident to the ordinary operation of an
electric car, but were the result of negligence on the part of the
motorman.

We are of opinion that upon the evidence in the case at bar it
could not be found that the motorman was negligent.  Although
the plaintiff testified that as the car came to the curve at the
Park Street station it swayed and gave a "violent" or "awful"
jerk, still these words do not add anything to the description, as
has been held by this court in several cases.  *Foley* v. *Boston &
Maine Railroad,* 193 Mass. 332.  *McGann* v. *Boston Elevated Rail-
way,* 199 Mass. 446.

Under the circumstances, as disclosed by the evidence, we are
of opinion that the descriptive expression of the plaintiff that the
jerk was so violent that it seemed "as though the car was going
to tip right over," is not enough to authorize a finding that the
car was negligently operated.  There are no physical facts from
which such negligence can be inferred.  That the plaintiff lost her
balance and her hand went through the window is no stronger
evidence of negligence in the operation of the car than if, in fall-
ing, she had placed it against any other part of the car.  From
the evidence it appears that she was standing in the aisle, with-
out holding on to anything, when the car ran around the curve.
There are no physical facts to show that the accident did not
occur by an ordinary jerk or lurching of the car as it passed over
the curve.  The evidence does not prove affirmatively that the
motorman was negligent.  The plaintiff's testimony that she
thought the car was going to tip over, without any other evidence
to warrant the inference of negligence, is not sufficient to justify a
finding that the car was improperly or negligently operated in
running around the curve.  Although the jerk was described as
"violent" and "awful," it does not appear affirmatively to have

been due to any carelessness in the operation of the car. We already have pointed out that the fact that the plaintiff's hand went through the window is not a physical fact from which alone negligence in the management of the car can be inferred. The case is governed by *Griffin* v. *Springfield Street Railway,* 219 Mass. 55; *Flanagan* v. *Boston Elevated Railway,* 216 Mass. 337; *Craig* v. *Boston Elevated Railway,* 207 Mass. 548; *Hunt* v. *Boston Elevated Railway,* 201 Mass. 182; *McGann* v. *Boston Elevated Railway,* 199 Mass. 446; *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332; *Weinschenk* v. *New York, New Haven, & Hartford Railroad,* 190 Mass. 250; *Byron* v. *Lynn & Boston Railroad,* 177 Mass. 303.

For the reasons already stated the case is distinguishable from *Rust* v. *Springfield Street Railway,* 217 Mass. 116, and *Nolan* v. *Newton Street Railway,* 206 Mass. 384. A majority of the court are of opinion that the exceptions must be sustained and judgment entered for the defendant under St. 1909, c. 236.

*So ordered.*

*F. Ranney, (T. Allen, Jr.,* with him,) for the defendant.
*H. P. Williams,* for the plaintiff.