WILLIAM DANOFSKY *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   January 16, 1917. — September 12, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & CROSBY, JJ.

*Negligence*, Street railway. *Carrier*, Of passengers.  *Street Railway.  Pleading, Civil*, Variance, Specifications.

In an action against a corporation operating a street railway for personal injuries, the plaintiff testified that, while he was standing in the aisle of a car of the defendant with his hand in a strap suspended from the top of the car for. the

purpose of affording such support, the car "came to a very sudden stop with a terrible jerk, it seemed as though it struck something; that it jerked his hold, he fell through the window, kind of sideways, that his left hand went through as far as his body would let it, that there were other people in the car and three women were taken off; they were pretty well shaken up and water had to be brought to them." Another passenger, who was standing directly. back of the plaintiff in the car, testified that the car "came to a sudden stop with a violent jerk; that he had hold of a strap with his left hand and when the car gave that jerk it just threw him around," that he "just managed to hold up" that "his knees kind of left him and he went forward on to the side seat," and described the manner in which the car stopped by saying, "It was more so than an ordinary stop; enough to throw anybody around." *Held*, that there was evidence for the jury of negligence on the part of the defendant in the operation of the car.

In the same case the plaintiff, in compliance with an order of the court made upon a motion of the defendant, filed specifications, which contained a statement that the plaintiff's hold was broken and he was thrown down by the passengers who were thrown off their feet by the sudden stopping of the car. The plaintiff, on his cross-examination, testified that, after he was thrown down, women who were thrown down were thrown on to him. But the plaintiff also testified that he had told his attorney how the accident happened and that what he told his attorney was to the same effect as the statements made in the specifications. *Held*, that the plaintiff's contradictory testimony did not require the finding of a variance between the allegations contained in the specifications and the proof.

In the same case it was stated in the specifications that the negligence relied upon by the plaintiff was negligence of the defendant's motorman, and the defendant contended that there was no evidence that the accident happened through the negligence of the motorman. One of the plaintiff's witnesses testified, in answer to a request to describe the accident, "Why it seems to me as if he threw the application of the brakes on like that (indicating by clapping hands together)." *Held*, that this evidence warranted a finding that the sudden stopping of the car was caused by the negligence of the motorman.

In the same case it was *said* that, under the view of the evidence taken by this court, it was not necessary to consider the defendant's contention that a statement contained in a specification stands in all respects and for all purposes as if it were a part of the declaration.

Tort for personal injuries sustained on October 16, 1914, when the plaintiff was a passenger on a street railway car of the defendant, by reason of the sudden and violent stopping of the car just before it reached the Dudley Street terminal of the defendant in Boston. Writ dated December 7, 1914.

The defendant filed a motion that the plaintiff be ordered to specify in regard to the following matters:

"1. The exact time the accident as alleged in plaintiff's declaration occurred. Please give the year, month, day of month, day of week, hour and minute.

"2. The exact place the accident as alleged in plaintiff's declara-

tion occurred, that is to say, on what street and opposite what number on such street said accident occurred.

"3. What acts or omissions to act the plaintiff relies on as constituting negligence on the part of the defendant as alleged in plaintiff's declaration."

The motion having been granted, the plaintiff filed the following specifications.

"1. The accident occurred on October 16, 1914, at 7.45 P.M.

"2. The place of the accident was the Dudley Street terminal station.

"3. The negligence relied upon is that of the motorman in so operating his car as to cause the passengers therein to be thrown off their feet against the plaintiff, breaking the plaintiff's hold and causing the plaintiff's hand to go through the car window."

The case was tried before *Hardy,* J. The evidence is described in the opinion. At the close of the evidence the judge ordered a verdict for the defendant on all the evidence and the pleadings. The plaintiff alleged exceptions, it being stated in the bill of exceptions that, if the judge had made a wrong ruling in connection with the verdict, the plaintiff was to have judgment in the sum of $500.

*H. Bergson,* for the plaintiff.

*A. E. Pinanski & G. E. Morris,* for the defendant, submitted a brief.

LORING, J. The plaintiff testified that while he was a passenger and was standing in the aisle of a car of the defendant railway company with his hand in the strap suspended from the top of the car for the purpose, the car "came to a very sudden stop with a terrible jerk, it seemed as though it struck something; that it jerked his hold, he fell through the window, kind of sideways, that his left hand went through as far as his body would let it, that there were other people in the car and three women were taken off; they were pretty well shaken up and water had to be brought to them." Another passenger who was standing directly back of the plaintiff testified that the car "came to a sudden stop with a violent jerk; that he had hold of a strap with his left hand and when the car gave that jerk it just threw him around." In answer to the question "Was your grip broken?" he said, "Some, I just managed to hold up . . . there were some women in the car

and one of them had to have some water brought to her; that everybody was thrown about in the car more or less." On cross-examination he testified that "his hold was broken somewhat; he did not get his hand out of the strap or fall to the floor; that his knees kind of left him and he went forward on to the side seat." In answer to the question "How do you describe the manner in which that car stopped?" he said: "It was more so than an ordinary stop; enough to throw anybody around."

The presiding judge "directed a verdict for the defendant on all the evidence and the pleadings." The case is here on an exception to that ruling.

1. The defendant's first contention is that the evidence introduced by the plaintiff did not make out a case of negligence in the sudden stopping of the car within the rule of this court established in *Anderson* v. *Boston Elevated Railway,* 220 Mass. 28, and the cases there collected. We are of opinion that it did.

2. The defendant's next contention is that there was a variance between the allegations and the proof. This contention is founded on testimony of the plaintiff not yet stated. On cross-examination the plaintiff testified more than once that after he was thrown down women who were thrown down were thrown on to him; while in his specifications the plaintiff stated that his hold was broken and he was thrown down by the passengers who were thrown off their feet by the sudden stopping of the car. But on this point the plaintiff's testimony was contradictory. He testified both ways. In addition to the testimony just stated the plaintiff was asked: "Do you know where your attorney got that information? That the motorman was so operating his car as to cause passengers therein to be thrown off their feet against you, breaking your hold and causing your hand to go through the car window?" In answer to this question he said: "I told him how it happened." He was then asked "Did you tell him what I have just read?" and the plaintiff answered "Words to that effect." In other words the plaintiff testified that he told his attorney how the accident happened and that what he told his attorney were words to the same effect as the statement made in the specifications.

3. The next contention of the defendant is that there was no evidence that the accident happened through the negligence of the motorman and it is alleged in the specifications that the

negligence relied upon was negligence of the motorman. One of the witnesses put on the stand by the plaintiff testified, in answer to a request that he describe the accident, "Why it seems to me as if he threw the application of the brakes on like that (indicating by clapping hands together)." This justified a finding that the sudden stopping was caused through the negligence of the motorman.

4. Under the view which we have taken of the case it is not necessary to consider the defendant's contention that a statement contained in a specification stands in all respects and for all purposes as if it had been a part of the declaration.

5. It is apparent from what has been said that the ruling directing the jury to find a verdict for the defendant was wrong. In accordance with the stipulation contained in the bill of exceptions the entry must be judgment for the plaintiff in the sum of $500, and it is

*So ordered.*