JOSEPH BILODEAU *vs.* FITCHBURG AND LEOMINSTER STREET RAILWAY COMPANY.

Worcester. September 28, 29, 1920. — December 6, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence,* Contributory, Voluntary intoxication, Street railway. *Passenger.* *Intoxicating Liquor. Practice, Civil,* Requests, rulings and instructions, Exceptions, Rebuttal. *Evidence,* Hospital record, To contradict witness. *Witness,* Contradiction.

At the trial of an action against a street railway company for personal injuries, it appeared that the defendant's tracks were upon a highway, and there was evidence tending to show that the plaintiff entered a car of the defendant, paid his fare and, because of the crowded condition of the car, remained in a back vestibule; that the car was "behind time," and, as it moved down grade over a track not thoroughly constructed and to some extent out of repair and entered a curve in the track, it was going at the rate of twenty to twenty-five miles an hour, which was in excess of the speed allowed by the defendant's rules

governing the running of its cars; that, owing to the swing of the car when it passed over the curve, the plaintiff lost his hold on the controller, by which he was steadying himself, was unable to seize any other support and was thrown from the car to the track and rendered unconscious, and that a car of the defendant immediately following ran over his legs. *Held,* that

(1) A finding that the plaintiff was a passenger while in the rear vestibule was warranted;

(2) Findings were warranted that the plaintiff was not guilty of contributory negligence, and that the defendant or its employees were negligent;

(3) A verdict for the plaintiff was warranted.

At the trial of the action above described, there was evidence tending to show that, shortly before entering the street car, the plaintiff had drunk intoxicating liquor, and the defendant contended that in consequence thereof he became intoxicated and that his fall from the car was the result of such intoxication. *Held,* that the question, how far, if in any degree, the use of the intoxicating liquor caused the plaintiff's fall or contributed to his injuries, was for the jury.

At the trial above described, the defendant asked for the following rulings: "If the plaintiff's voluntary use of intoxicating liquors so affected the plaintiff while he was upon . . . [the first car] that he acted in a way other than the way an ordinarily prudent man would act and comport himself upon a street railway car under the circumstances in which the plaintiff found himself, and as a result, either wholly or in part, he fell or was thrown from . . . [the first car], he was not in the exercise of due care, and he cannot recover." "If the use of intoxicating liquors by the plaintiff contributed in any degree to cause his injury he cannot recover." There was no evidence of wilful, wanton or reckless misconduct on the part of the defendant's employees in control of the second·car. The rulings were refused, subject to exceptions by the defendant, and this court *held,* that they accurately stated the law and that they were not unequivocally and positively given in the charge; and the defendant's exceptions were sustained.

If, in the action above described, it was found that the fall of the plaintiff from the street car upon which he was riding was not caused by contributory negligence on his part, then he did not cease to be a passenger while lying upon the track and the defendant was required in the operation of the second car to use toward him the care it owed to a passenger.

If voluntary intoxication on the part of the plaintiff in the action above described was found to be the direct and proximate cause of his fall from the car upon which he was a passenger, his rights as a passenger ceased when he fell, and thereafter he had the rights only of a traveller upon the highway.

At the trial of the action above described, there was no evidence that either the motorman or the conductor of the street car upon which the plaintiff was a passenger had any knowledge of his intoxicated condition, if such condition existed, and it therefore was *held,* that the decision in *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448, was not applicable.

At the trial of the action above described, there was no evidence justifying a finding that the motorman of the second car, which ran over the plaintiff, was guilty of wilful, wanton or reckless conduct. The plaintiff contended that he had been guilty of such conduct. The defendant asked for rulings as follows: "If the plaintiff's lack of care contributed in any degree to his fall from . . . [the first car], he cannot recover for any injury sustained in said fall or as a result of the injury which befell him when . . . [the second car] ran over his

legs, unless there is evidence that the motorman of . . . [the second car] was guilty of wilful and wanton negligence." "There is no evidence of wilful or wanton negligence on the part of the motorman of . . . [the second car.]" *Held*, that, while the language of the rulings requested, in speaking of "wilful . . . wanton negligence," was inaccurate, the requests directed the attention of the trial judge to an aspect of the case which called for an instruction that there was no evidence sufficient to support such a contention of the plaintiff, and that it was error not to give appropriate instructions upon the subject.

An exception saved by the defendant, at the trial of the action above described, to the admission of certain rules of the public service commission requiring wheel guards and fenders on street cars, was overruled, although there was no evidence that the rule had been disobeyed, the judge in his charge having instructed the jury to disregard the evidence.

A rule of the defendant relating to spacing and speed of cars following one another was *held* properly to have been admitted at the trial above described, with a sentence at the end, "No excuse will be received for a rear-end collision," omitted; and it also was *held* that the defendant was not harmed by such omission.

Even if records of certain alleged rules established by the defendant, in the action above described, governing the conduct of its employees, were destroyed and therefore could not be put in evidence, testimony of a former employee of the defendant describing certain orders and instructions given to him by a claim agent of the defendant was not admissible in the absence of evidence of authority of the claim agent to issue such orders or instructions on behalf of the defendant.

Where a witness in direct examination has answered questions relating to a relevant matter by stating merely that he did not remember, the party calling him cannot introduce, for the purpose of contradicting his witness, evidence of statements previously made by the witness on the subject matter under inquiry.

At the trial of the action above described, there was evidence that, after his injury, the plaintiff was taken to a hospital, and a hospital record was introduced in evidence which, among other things, stated that the plaintiff "Vomited fluid twice resembling coffee grounds & had an odor of whiskey." In his instructions to the jury, the trial judge ruled that the record might be "admitted as far as it relates to the treatment and medical history" of the plaintiff's case. *Held*, that the use of the record was too much restricted by the judge and that, under Sts. 1905, c. 330, § 2; 1912, c. 442, § 2, the statement in the record above quoted was evidence of the fact that the odor of whiskey in the *vomitus* existed very shortly after the accident and came from a use of whiskey before the plaintiff had boarded the defendant's car.

At the trial of the action above described, the judge permitted the plaintiff in rebuttal to call a claim agent of the defendant, who had not testified previously, and to ask him whether he had had a certain conversation with the plaintiff in the hospital in which he had made inquiries as to whether or not the plaintiff had been drinking on the night when he was injured, and, upon the claim agent denying such conversation, the judge permitted the plaintiff to be recalled and to testify that such a conversation had occurred, and that, in response to the claim agent's inquiries, he had stated that he had not been drinking. *Held*, that, although the order in which evidence shall be introduced at a trial is wholly within the discretion of the trial judge, the evidence above described should have been excluded, it being evidence of self-serving statements by the plaintiff, and incompetent.

Testimony, at the trial above described, in cross-examination of a medical expert
called by the defendant, that the witness had been employed by many insurance
companies, and, in answer to a question, "You are acting for an insurance com-
pany now?" an answer "Not that I know of," followed by further testimony
that he was "working for" the counsel for the defendant, are not grounds for
taking the case from the jury and continuing it.

TORT for personal injuries. The allegations of the declaration
were merely that the plaintiff "was a passenger upon one of the
defendant street railway company's cars on September 21, 1918,
when he was thrown off same and run over and both his legs cut
off. And the plaintiff says that his injuries were caused by the
negligence of the defendant, its officers, agents or servants."
Writ dated June 21, 1919.

In the Superior Court the action was tried before *N. P. Brown,*
J., during thirteen court days.

The instructions of the judge, referred to in the opinion, relat-
ing to rules of the public service commission as to wheel guards
and fenders were as follows: "You will also recollect certain rules
or regulations purporting to be regulations promulgated by the
Public Service Commission upon the subject of jacks, wheel
guards, etc., were put in evidence. You understand, of course, in
the trial of a case of this kind, it is something like picking apples
in the fall, you pick all that look good to you and take them to
the house and then look them over again, and those that don't
look good to you you throw away, and those that do, you keep.
I am now trying to throw away some of those we collected earlier
in the case which now don't look good as a matter of law. These
regulations I instruct you have no application to this case. No
evidence has been introduced connecting them sufficiently with
the case so that I feel you are justified in any way in considering
them. As you readily see, the presence of a jack on the car, and
in some aspects perhaps wheel guards, might be material merely
upon the question of damages, although there is a possibility that
as to wheel guards the presence or absence of them might have
some effect in preventing a possible injury. But there is no evi-
dence in this case of the absence of wheel guards such as would
justify the application of any regulations such as have been in-
troduced nor of jacks nor of fenders."

The defendant's "Rule 120," referred to in the opinion was as
follows: "120. Spacing. When several cars are operating on the

same running time, cars following should not run up to the lead-
ing car when stopped, but should stay back a distance of five
poles, checking speed until the head car has started. This will
apply to all operation except on turnouts and terminal points.
Do not run closer to a preceding car than five hundred (500) feet
unless ordered to do so. No excuse will be received for a rear-end
collision."

The exceptions to the exclusion of evidence which the de-
fendant asserted tended to contradict one of its own witnesses,
referred to in the opinion, were saved under the following cir-
cumstances: One Berger, called by the defendant, had testified
that in 1918 he had operated a café in Fitchburg where he had
sold intoxicating liquors. To several questions as to whether the
plaintiff was in his saloon on September 21, 1918, as to whether
he had met and had had a conversation with Emerson W. Baker
within a week and a half or two weeks preceding the trial, or as to
any conversation he had had with him on the subject of the plaintiff,
the witness answered that he did not remember. Later in the
trial, the defendant called Emerson W. Baker, who testified that
he was associated as counsel for the defendant, and offered to
show that he had had a conversation with the witness Berger
within a week and a half or two weeks of the trial, and that Berger
had said to him "in substance, that he had been trying to find the
man with whom he sent Bilodeau out of his saloon on the night
of his accident and that so far he had been unable to find the man
or secure his name." The evidence was excluded and the de-
fendant saved an exception.

The evidence admitted in rebuttal, and referred to in the
opinion, was in substance as follows: After the close of the de-
fendant's evidence the plaintiff called one Reed, who testified that
he was the claim agent of the defendant and who, under direct
examination by the plaintiff's counsel, testified in substance that
he had not participated in nor heard a certain conversation at a
hospital where the plaintiff had been taken following the accident;
and, to a question by the plaintiff's counsel, "Did you say to Joe
Bilodeau that day, when you went up there, after the quarantine
was lifted, — 'Joe, you were drinking that night, weren't you?'
and he says to you, 'No, I wasn't,' and you said to him, 'Well,
how is it that all these people down stairs say you were drinking;

the priest says you were drinking; how is it that they say that; are they all liars?' and Joe Bilodeau said 'I am not saying they are liars but I wasn't drinking and they must have misjudged me.' Did that conversation take place; answer Yes or No?" the witness answered "Absolutely no." The plaintiff then was recalled and, having been asked whether he had heard his counsel's questions of Reed "about the time he came to see you after the quarantine was removed" and having answered affirmatively, he was allowed to be further interrogated as follows: Q. "What did Reed say to you?" A. "He says 'You was drunk that night' and I said 'No, sir.' He said 'Do you mean to say that your priest and all those people down stairs are liars?' I said 'I don't mean to say they are liars but they must have misjudged me.'" — Q. "Were you under the influence of liquor at all that night?" A. "No, sir."

The priest referred to had been called by the plaintiff in his case in chief and had testified that he went to the hospital the night of the plaintiff's injury and "got there about midnight; saw the plaintiff"; "smelled no liquor on" him, "and saw no signs of intoxicating liquor on him at all; that the plaintiff was unconscious;" that he (the witness) "did not talk with anybody;" that "he never made any statement to anybody at any time regarding" the plaintiff's condition, and that he never saw Reed before the day of the trial, and never talked with him.

The cross-examination of the defendant's medical expert, referred to in the opinion, was as follows: Q. "You forgot to state how many insurance companies you were acting for, in your qualifications?" A. "Yes." — Q. "How many insurance companies have you been acting for?" A. "As many as there are in the city of Boston." — Q. "You are acting for an insurance company now?" A. "Not that I know." — Q. "You are acting for the F. & L.?" A. "I am acting for Mr. Milton [defendant's counsel]." — Q. "Are you acting for the F. & L.?" A. "In one sense, I am." — Q. "How much are you getting per day?" [The defendant's counsel interposed: "Do you claim there is any insurance company which has insured the F. & L.?" The plaintiff's counsel stated: "I would like to know, if the court please, what this gentleman's interest is here."] Q. "Are you an expert and is your sole interest working for the F. & L. Street

Railway Company or are you working for Dr. Gay [who had been called by the defendant] or somebody representing Dr. Gay, some insurance company representing Dr. Gay?" A. "No." — Q. "Who are you working for?" A. "Mr. Milton." — Q. "You don't know whom he represents?" A. "Yes." — Q. "Does he represent the F. & L. solely in this matter?" A. "Yes." — Q. "How much are you getting per day?" A. "As much as I can get. I don't know how much it will be."

After the introduction of the testimony above described, the defendant moved that the case be taken from the jury and be continued. The motion was denied.

Other material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor, and, that motion being denied, made forty requests for rulings, the first nine of which were to the effect that there was no evidence warranting findings of negligence on the part of the defendant or its servants or agents which would justify a verdict for the plaintiff. Other material requests were the following:

"19. If the plaintiff's lack of care contributed in any degree to his fall from Car 44 [the first car], he cannot recover for any injury sustained in said fall or as a result of the injury which befell him when the Car 50 [the second car] ran over his legs, unless there is evidence that the motorman of Car 50 [the second car] was guilty of wilful and wanton negligence.

"20. There is no evidence of wilful or wanton negligence on the part of the motorman of Car 50 [the second car]."

"25. If the plaintiff's voluntary use of intoxicating liquors so affected the plaintiff while he was upon Car 44 that he acted in a way other than the way an ordinarily prudent man would act and comport himself upon a street railway car under the circumstances in which the plaintiff found himself, and as a result, either wholly or in part, he fell or was thrown from Car 44, he was not in the exercise of due care, and he cannot recover.

"26. If the use of intoxicating liquors by the plaintiff contributed in any degree to cause his injury he cannot recover."

"37. Unless the defendant's negligence was the sole cause of the plaintiff's injuries, the plaintiff cannot recover."

The requests were refused. The jury found for the plaintiff in the sum of $30,000; and the defendant alleged exceptions.

*C. C. Milton,* (*E. W. Baker* & *F. L. Riley* with him,) for the defendant.

*J. M. Hoy,* (*M. F. O'Connell* with him,) for the plaintiff.

BRALEY, J. The plaintiff boarded the defendant's car, and, the conductor having received his fare, he became a passenger even if, because of its crowded condition, as the jury could find, he stood inside of the rear vestibule with one hand on the controller. *Lockwood* v. *Boston Elevated Railway,* 200 Mass. 537, 542. *Pomeroy* v. *Boston & Northern Street Railway,* 193 Mass. 507, 511. The defendant accordingly was bound "to use the highest degree of active diligence commensurate with the mode of transportation employed and the practical operation of its railway." *Marshall* v. *Boston & Worcester Street Railway,* 195 Mass. 284, 287, and cases cited. *Millmore* v. *Boston Elevated Railway,* 194 Mass. 323. *Thayer* v. *Old Colony Street Railway,* 214 Mass. 234. The plaintiff testified that while passing over a curve "all at once the car made an awful sway and I lost my hold; I was hanging on to the controller; and it threw me, when I saw myself go I dropped everything . . . and made a grab for the centre piece, the pole; my elbow touched the man standing next to the rod; I lost it and was thrown out head first; my head struck something and that is all I remember." Nor is there any dispute that as the plaintiff lay unconscious in the street with his body partially on one of the outer rails, a car of the defendant immediately following came up and passing over him inflicted severe personal injuries resulting in the amputation of both legs just below the knee. The jury, upon evidence which was properly admitted, could find that the car as it entered the curve was "behind time," and moving on a down grade from twenty to twenty-five or thirty miles an hour over a track which on the evidence of the plaintiff's experts was not at this point thoroughly constructed, and had become to some extent in disrepair, and the rate of speed was in excess of the company's rules. The defendant however contends that the swaying of the car was not unusual, and the descriptive adjectives of the various witnesses as to speed and lateral motion can add nothing to the probative force of their evidence. *Byron* v. *Lynn & Boston Railroad,* 177 Mass. 303. *Sanderson* v. *Boston*

*Elevated Railway*, 194 Mass. 337.    But on the record a finding would have been warranted, that the car was "swaying — a sharp sway sideways," "going from one side to the other, shaking back and forth," "waving back and forth," and that these movements were excessive, violent and irregular, and that the plaintiff would not have been thrown off, nor would the accident have happened if there had not been negligence in the operation of the car.    *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527. *Marshall* v. *Boston & Worcester Street Railway*, 195 Mass. 284. *Spooner* v. *Old Colony Street Railway*, 190 Mass. 132, 134, 135, 136.    *Nolan* v. *Newton Street Railway*, 206 Mass. 384, 389.    *Bell* v. *New York, New Haven, & Hartford Railroad*, 217 Mass. 408, 410.    *Griffin* v. *Springfield Street Railway*, 219 Mass. 55.    *Johnson* v. *Bay State Street Railway*, 222 Mass. 583.    *Creedon* v. *Galvin*, 226 Mass. 140.    While it could have been found that shortly before taking passage the plaintiff to some extent at least had drunk intoxicating liquor, how far, if in any degree, its use caused his fall, or contributed to his injury was a question of fact.    The jury might have been convinced on the evidence of the plaintiff and his witnesses that the amount of beer which he admitted to have taken was the only intoxicant used, and that it in no way affected his conduct.    The defendant's motion for a directed verdict could not have been granted, and its requests that on all the evidence the plaintiff could not recover, and that there was no evidence of the defendant's negligence, or the negligence of its employees, and that the plaintiff was guilty of contributory negligence, and that there was no evidence which would warrant the jury in finding that the car was being operated at an excessive rate of speed, could not have been given.    *Work* v. *Boston Elevated Railway*, 207 Mass. 447.    *Heshion* v. *Boston Elevated Railway*, 208 Mass. 117, 118.    *Griffin* v. *Springfield Street Railway*, 219 Mass. 55.    *Vahey* v. *Boston Elevated Railway*, 222 Mass. 374.

Its remaining exceptions, substantially one hundred and thirty-seven in number, are to the failure to give other requests, and to certain portions of the instructions, and to rulings on the admission and exclusion of evidence.

It was as we have said for the jury to determine whether the plaintiff used intoxicating liquor, and if so, whether its use contributed in any degree to his injuries, and the defendant's twenty-

fifth and twenty-sixth requests, that if it did he could not recover accurately stated the law. *Labrecque* v. *Donham, ante,* 10. The requests were not unequivocally and positively given. The jury on this question and other material issues were instructed that, "The mere fact that a passenger who is injured on a common carrier is under the influence of intoxicating liquor, or even so far under the influence as to be called drunk, does not deprive him of the right of recovery. It is of importance, not in determining the extent to which his condition of possible intoxication went, but, in view of what may have been its extent, what effect it may have had upon his doing those things, or his failing to do those things which he should have done or should not have done to measure up to the standard of the reasonable, prudent, and careful passenger on that car that evening. For illustration, a man may be what is commonly known as paralyzed drunk and a passenger upon a common carrier, and, by reason of an act of negligence on the part of the carrier's servant, the car becomes derailed and he with other passengers is injured, he may recover under those assumed facts no less than the perfectly sober person who was sitting beside him, for the reason that neither one of them has done anything, or omitted to do anything which they should have done or should not have done under the circumstances to care for his own safety. Now what was Joe Bilodeau doing, what did he do, if anything, on the back platform that could be termed an act of negligence which contributed to his injury? And there is where we reach the first difficulty in the case. The injuries of which he complains were not received as an immediate result of the fall. In other words, it was not the fall which caused them. He was not thrown immediately in front of a passing car. He was not thrown on to a buzz saw. He was thrown and remained upon the ground for some period of time greater or lesser, before finally injured by another car. . . .

"Now that car was crowded and in taking a position on the rear platform, he was obliged to use such care as he was able to use — I don't mean with reference to his sobriety, but such care as the reasonable, prudent and careful man would have exercised under the circumstances to provide for his own safety upon that rear platform. . . .

"Then you have the second possible explanation of the facts

in the case, and that is, where you might possibly determine that both the company and Bilodeau's negligence contributed to his being thrown out of the first car. In that event, Bilodeau would still possess the status of a passenger if he lay stunned on the ground while the second car was approaching and was entitled to have the servants of the company use toward him the utmost care with regard to his safety consistent with the operation, the practical operation of the road, including the operation of the car which might have injured him. The company would be liable, in spite of Bilodeau's negligence, in spite of his intoxicated condition, if you should find he was in an intoxicated condition, if that condition and that negligence did not contribute to the running over of his legs, but if it rather was a condition. . . .

"Now suppose still a further possible situation here; and that is that no act of negligence on the part of the company was responsible for Joe's leaving the car, but it was entirely his fault that he got out of the car in the first place. In that event, I instruct you that he would nevertheless be a passenger until such time as he had had an opportunity, if such an opportunity existed, to re-establish another status. And the same rule of law would apply. What responsibility could be attached to the driver of the second car, there being no act of negligence on the part of the company by reason of the operation of the first, and he having gotten out of the first car by reason of his own negligence. Then you would have to determine whether or not at the moment he was run over by the second car, he was guilty of an act of negligence which contributed to that injury, or whether he had been there long enough in your opinion to make it merely a condition with which the second motorman had to deal. If it was not a condition under those circumstances and you should say that his negligent act came so near in point of time and distance to the place where he was injured and the time when he was injured that he was guilty of contributory negligence to the actual results to him, then he could not recover unless he should satisfy you by a fair preponderance of the evidence that he was run over by the wanton and wilful negligence of the motorman of the second car as I have already described to you wanton and wilful negligence. . . .

"The last possible view of the facts would be a situation where

neither the motorman of the first car nor Joe committed any negligent act resulting in his getting off of the first car. If you should view the situation as justifying that conclusion, the result would be determined entirely with reference to the care of the motorman of the second car. He would still have the status of a passenger as I have given it to you before, and the standard of care which would have to be observed by all other servants of the road, as well as those operating the car upon which he originally took passage as others, would be the utmost care consistent with the practical operation of the road. . . .

"You have therefore four possible views which you can take. First that so far as his leaving the first car was concerned, the company was negligent and he was not. Second, that both he and the company were negligent. Third, that he was negligent and the company was not. And fourth, that neither one of them was negligent. And then you will have to apply the principles with reference to the actual running over of his legs that I have attempted to describe to you."

The declaration in one count is at common law alleging that the plaintiff while a passenger upon one of the defendant's cars "was thrown off . . . and run over and both his legs cut off," and "that his injuries were caused by the negligence of the defendant, its officers, agents or servants." If the plaintiff's use of intoxicants did not in any degree contribute to his fall he did not cease to be a passenger while lying on the track, and the defendant's negligence in the operation and management of the first car could be found to be the efficient cause of all his injuries. *Eaton* v. *Boston & Lowell Railroad,* 11 Allen, 500. *Lynn Gas & Electric Co.* v. *Meriden Fire Ins. Co.* 158 Mass. 570, 574, 575. *Hudson* v. *Lynn & Boston Railroad,* 178 Mass. 64. *Igo* v. *Cambridge,* 208 Mass. 571. But if it were found that the plaintiff's voluntary intoxication was the direct and proximate cause of the fall, his rights as a passenger had terminated, and he had only the rights of a traveller on the public ways. *Hickey* v. *Boston & Lowell Railroad,* 14 Allen, 429. *Commonwealth* v. *Boston & Maine Railroad,* 129 Mass. 500, 502. *McKimble* v. *Boston & Maine Railroad,* 139 Mass. 542. *Creamer* v. *West End Street Railway,* 156 Mass. 320, 321. The plaintiff relies on *Renaud* v. *New York, New Haven, & Hartford Railroad,* 210 Mass. 553, as supporting the

instructions that in any event he continued to be a passenger. But that action was brought by an administrator under St. 1906, c. 463, Part I, § 63, to recover damages while a passenger for the death of his intestate. And as stated in the opinion the plaintiff under the statute could recover even if his intestate was not in the exercise of due care. It also was said that because of the in-testate's violation of a regulation forbidding passengers to go upon the step of the car while the car was in motion, if death had not supervened, he could not in his own right have maintained an action for damages. The case at bar is manifestly different. The case of *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448, which apparently was followed to some extent in a part of the instructions previously quoted is also not in point. The jury in that case could have found that the plaintiff, a pas-senger, was so intoxicated that when the train stopped at the sta-tion he was unable to get off, and the conductor and brakeman took him out of the car, and up a flight of steps which led to the station platform, turned round and left him at the fifth or sixth step. The plaintiff for a moment balanced himself and then fell backward, turned a somersault and struck on the back of his head. After stating that if the plaintiff's voluntary intoxication was a direct and proximate cause of the injury he could not re-cover, the ground on which it was held that the plaintiff was entitled to go to the jury is as follows: "the doctrine has been established that, when the plaintiff's negligence or wrongdoing has placed his person . . . in a dangerous situation which is beyond his immediate control, and the defendant, having full knowledge of the dangerous situation, and full opportunity, by the exercise of reasonable care, to avoid any injury, nevertheless causes an injury, he is liable for the injury. . . . The fundamental principle is . . . that the plaintiff's condition, resulting from his previous negligence or wrong, is not a direct or proximate cause of the later injury, inflicted by one who acts independently, with knowledge of this condition and in reference to it." If it be as-sumed the jury in the present case might have been satisfied that the plaintiff was so intoxicated as to be incapable of exercising ordinary care, there is no evidence that the defendant's motor-man or conductor on either car had any knowledge of his condi-tion. The instructions were inadequate, misleading and erroneous.

The thirty-seventh request that unless the defendant's negligence was the sole cause of the plaintiff's injuries he could not recover, also should have been given without qualification.

We assume from the defendant's nineteenth and twentieth requests, when read in connection with a portion of the instructions, that the jury were asked by the plaintiff to find that the motorman of the second car had been guilty of wilful, wanton and reckless conduct. The issue is not open under the declaration. But aside from any question of pleading, which does not appear to have been recognized at the trial, we discover nothing in the record warranting such inference. The requests while inaccurately speaking of "wilful and wanton negligence," directed the attention of the judge to this aspect of the case, and he should have instructed the jury that the evidence was insufficient to support the plaintiff's contention. *Freeman* v. *United Fruit Co.* 223 Mass. 300. *Altman* v. *Aronson,* 231 Mass. 588. *Bergeron* v. *Forest,* 233 Mass. 392, 401, 402.

A new trial must be granted because of the errors to which we have sufficiently referred, and a further review of the requests and of the instructions would serve no useful purpose.

The exceptions to evidence not already covered by what has been said require no comment except as to questions likely to again arise. The rules of the public service commission requiring street railway cars to be equipped with headlights, wheel guards, fenders and lifting jacks, which were read to the jury in so far only as they related to wheel guards and fenders on the second car, should have been wholly excluded. But the judge having fully instructed the jury to disregard the evidence, the defendant fails to show reversible error. *Dempsey* v. *Goldstein Brothers Amusement Co.* 231 Mass. 461. *Clark* v. *Boston & Maine Railroad,* 164 Mass. 434. The book of rules and certain general orders or regulations of the defendant for the operation of cars, produced by the company's president at the plaintiff's request, were properly admitted, and the exclusion from the first paragraph of Rule 120 of the words, "No excuse will be received for a rear-end collision" did not harm the defendant. *Stevens* v. *Boston Elevated Railway,* 184 Mass. 476, 478, 479, and cases collated.

It having appeared that a fire at the car barn had destroyed all previous records or orders, the plaintiff was permitted to show

by a former employee of the defendant that he received at the claim agent's office when being instructed as to his duties before entering upon his work, a verbal order, that on cars of the type in which the plaintiff was riding the doors were to be kept closed except "when the car was at a dead stop," and that, never having been revoked, it was still in force. The evidence should have been excluded. Even if a sufficient foundation had been laid to make secondary evidence admissible, a question it is not necessary to decide, the claim agent is not shown to have had any authority to issue orders of the character described. *Howard* v. *New York, New Haven, & Hartford Railroad, ante,* 370.

The exceptions to the exclusion of evidence which the defendant claimed tended to contradict one of its own witnesses cannot be sustained. *Corsick* v. *Boston Elevated Railway,* 218 Mass. 144, 147.

The effect of the hospital records as evidence only "as far as it relates to the treatment and medical history" of the plaintiff's case, was too strictly limited. The entire record as finally put in evidence by the plaintiff had this sentence, "Vomited fluid twice resembling coffee grounds & had an odor of whiskey." The defendant then offered that part of the record which earlier had been excluded, "had an odor of whiskey," on all grounds, meaning as we understand the offer that it bore upon the issue whether at the time of the accident the plaintiff was intoxicated. The final ruling was that "It may be admitted as far as it relates to the treatment and medical history of Mr. Bilodeau's case." The defendant in our opinion could properly contend that the odor of whiskey in the *vomitus* was evidence of the fact that it existed very shortly after the accident and arose from the plaintiff's use of whiskey before he boarded the car. *Leonard* v. *Boston Elevated Railway,* 234 Mass. 480.

While the testimony offered by the plaintiff at the close of the defendant's evidence was not strictly in rebuttal, the order in which relevant evidence shall be introduced is wholly within the discretion of the presiding judge, to the exercise of which exceptions will not lie. *Smith* v. *Paul Boyton Co.* 176 Mass. 217, 221. *McLean* v. *Paine,* 181 Mass. 287. But the testimony would not have been competent even if offered in chief, and should have been excluded. It was a successful and wholly unjustifiable at-

tempt to get before the jury, greatly to the defendant's prejudice, inadmissible, self-serving declarations of the plaintiff, that he was not drunk, nor under the influence of liquor on the night in question.

The cross-examination of a medical expert called by the defendant does not appear to have gone to the extent of attempting to show even indirectly that the defendant was insured, and the plaintiff properly could inquire whether the witness was in the general employment of the defendant or of the defendant's counsel. *Dempsey* v. *Goldstein Brothers Amusement Co.* 231 Mass. 461, 464.

*Exceptions sustained.*